

**THE ATTORNEY GENERAL**

**OF TEXAS**

GERALD C. MANN

~~XXXXXXXXXXXXXXX~~
~~ATTORNEY GENERAL~~

AUSTIN 11, TEXAS

Honorable Melvin Combs
County Attorney
Jefferson County
Beaumont, Texas

Dear Sir:

Opinion No. 0-3860
Re: Authority of fresh water supply
district, created under Art. XVI,
Sec. 59, Constitution, and Ch. 4,
Title 128, R.C.S., to incur in-
debtedness.

We have your letter of August 7, submitting for our opinion eight questions that will be taken up in the order in which they are propounded:

First --

"Can a fresh water supply district, created under Article 16, Sec. 59 of the Constitution and Chapter 4, Title 128, R.C.S. of Texas, in-cur indebtedness by first procuring authority to do so by proper election in the district?"

We refer you to Article 7922, Revised Civil Statutes, which reads as follows:

"In the accomplishment of the purposes enumer-ated in the fourth preceding article, such dis-tricts may or may not issue bonds and may or may not incur indebtedness. No bonds by or on behalf of such districts shall be issued nor shall any indebtedness against the same be incurred unless the proposition to issue such bonds or to incur such indebtedness shall be first submitted to the qualified property taxpaying voters of such dis-trict, and the proposition adopted by a majority vote at an election held to determine such ques-tion."

We think the foregoing quoted article clearly authorizes the district to incur debt upon a vote of the people having the qualifications there provided.

Your second question is:

"If you have answered Question 1 in the
negative, then state in what manner a fresh
water supply district can create an indebted-
ness?"

Inasmuch as Question Number 1 has been answered in the
affirmative, it is unnecessary to answer Question Number 2.

Question Number 3:

"Can a fresh water supply district issue
revenue bonds to secure an indebtedness?"

It is well established law that political subdivisions
of the State have only such powers as are conferred by law or
such incidental powers as are necessary to carry out the ex-
press powers granted. We find no authority in Title 128 author-
izing fresh water supply districts to issue bonds to be secured
by revenues obtained from the operation of the improvements con-
structed by such district. You are advised that in the absence
of an express authority to issue such bonds the district does
not have the right and, therefore, no revenue bonds can be is-
sued.

Your Question Number 4 is as follows:

"Does such a fresh water supply district have
authority to create an indebtedness, duly author-
ized by proper election, for the purposes set out
in Article 7918, and issue notes or warrants evi-
dencing same?"

Article 7918 reads as follows:

"All districts shall have full power and
authority to build, construct, complete, carry
out, maintain, and in case of necessity, add
to and rebuild all works and improvements with-
in and without such district necessary to ac-
complish any plan of conservation, transporta-
tion and distribution of fresh water adopted for
or on behalf of such district, and may make all
necessary and proper contracts and employ all
persons and means necessary to that end; and such
districts are authorized, if the governing bodies
thereof shall deem it necessary, to take over in
whole or in part by purchase or otherwise any
water plants or systems within such districts".

It will be noted that this article confers both power and authority upon such district to construct and otherwise improve facilities for the purpose of accomplishing a plan of conservation, transportation and distribution of fresh water, such as may have been adopted by such district, and states expressly that it shall have the authority to make all necessary and proper contracts and pursue any means necessary to attain that end. Therefore, we are of the opinion that following the authorization to incur an indebtedness, as provided by Article 7922, that the district would have the authority to issue notes or warrants for the purpose of evidencing such indebtedness.

Your Question Number 5 reads as follows:

"Can such a fresh water supply district discharge its lawful indebtedness from the revenues of the district derived from the sale of water, after the operating expenses and upkeep of the district have first been paid?"

In answer to this question we refer you to Article 7910 of the Revised Civil Statutes which expressly provides for the use of excess funds. This article reads as follows:

"The Board shall prescribe the manner and terms upon which water shall be furnished and shall be authorized to fix the rate to be charged users of water from such district and shall promulgate rules and regulations governing the distribution and use of water; and shall apply the revenue from the sale of such water to operating expenses and the upkeep of the system of improvements installed in said district, and any surplus that may be left after paying such expenses <u>shall</u> be from year to year applied to the paying of interest on the bonds or other indebtedness that may be incurred by the district and if there be more than enough to pay operating and upkeep expenses and the interest on the indebtedness of the district, <u>then such surplus shall</u> be passed to the sinking fund."

We not only think that the district has the authority to use the excess funds for such purpose but under the wording of the above quoted article, it appears mandatory that such excess as may accrue shall be used in such manner.

Your Question Number 6 reads as follows:

"Can the net revenues (revenues remaining, if any, after operating expenses and upkeep of the district have first been paid) of such type of district be pledged to secure an indebtedness, duly authorized and evidenced by a series of notes or warrants, each note or warrant to be paid from the current net revenues procured during the period of time for which said note or warrants was given?"

It will be noted that no express authority has been conferred to pledge such revenues to the payment of indebtedness that may be authorized under Article 7922, and, further, that the language of the above quoted article clearly states that only in the event a surplus exists after the payment of operating expenses and upkeep of the improvements that such funds shall be used for the retirement of such indebtedness as may have been incurred. Such pledge as the district might make toward securing an indebtedness will, of course, be confined to such funds as would accrue over and above the cost of operating and maintaining the district; however, we see no inhibition in the statutes that would prevent the district undertaking to secure its indebtedness by a pledge of such surplus if, as and when accumulated. It appears that the district has the general power necessary to manage its affairs in a manner designed to accomplish the purposes for which the district was established, and we think the district would have the power to arrange for the paying and securing of indebtedness in a manner not inconsistent with law, by authority of Article 7917, which reads, in part, as follows:

"No enumeration of specific powers herein shall be held a limitation upon the general powers conferred by this chapter unless distinctly so expressed."

Your Question Number 7 reads as follows:

"Does a fresh water supply district have authority to borrow funds from the Federal Government, or an agency thereof, for the purpose of constructing a fresh water distribution system, and secure such loan in some manner other than by the issuance of bonds (secured by taxes)?"

In our opinion the district would have the authority to borrow funds from the Federal Government or any agency thereof, to be evidenced by the issuance of notes or warrants which may be secured by the levy of a tax authorized at the time the proposition for incurring the indebtedness is submitted to the qualified property taxpaying voters of such district, pursuant to the provisions of Article 7922.

Question Number 8 reads as follows:

"If you have answered Question 7 in the affirmative then state in detail how such loan can be secured?"

We think the answer stated to Question Number 7 fully answers this question.

Trusting that the foregoing fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS


By s/Clarence E. Crowe
Clarence E. Crowe
Assistant

CEC-s-wc

APPROVED AUG 21, 1941
s/Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee By_CEC_Chairman